## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: Drema O'Dell,                                       Chapter 7

                    Debtor(s)

CASCADE FUNDING RM I ALTERNATIVE          NO 22-12578 AMC
HOLD INGS, LLC

                    Creditor           11 U.S.C. § 362

     vs.

Drema O'Dell,

                    Debtor(s)

Gary F. Seitz, Esq.,

                    Trustee



FILED
DEC - 1 2022
TIMOTHY McGRATH, CLERK

## MOTION TO CONVERT CHAPTER 7 CASE TO CHAPTER 13 CASE AND RE-IMPLEMENT THE STAY ON OUT OF BANKRUPTCY COLLECTIONS

1. The motion is filed by the Debtor.

2. Pursuant to 11 U.S.C. §706(a), the Debtor may convert this case to a case under Chapter 13 "at any time." The Debtor elects to convert this case to a case under Chapter 13.

3. Pending the conversion, the Debtor seeks to have the "automatic stay" re-implemented to suspend the acts of Cascade Funding RM1 Alternative Holdings LLC to eject the Debtor from the premises at 1801 Whispering Brooke Drive, including all actions in the Court of Common Pleas of Chester County, Pennsylvania and the Superior Court of Pennsylvania.

4. The Debtor requires the assistance of counsel for the conversion.

Accordingly, the Debtor requests that the Debtor be allowed to disburse

funds to hire and retain counsel.

Respectfully submitted:

Drema O'dell
*Pro Se*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: Drema O'Dell,                                    Chapter 7

Debtor(s)

CASCADE FUNDING RM I ALTERNATIVE                        NO 22-12578 AMC
HOLD INGS, LLC

Creditor                                                11 U.S.C. § 362

vs.

Drema O'Dell,

Debtor(s)

Gary F. Seitz, Esq.,

Trustee

### CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing Motion to Convert Chapter 7 Case to Chapter 13 Case and Re-Implement the Stay on Out of Bankruptcy Collections have been served on December 1, 2022, by first class mail, postage prepaid upon those listed below:

Trustee:
Gary F. Seitz, Esq.
Gellen Scali Busenkell & Brown LLC
8 Penn Center, 1628 John F. Kennedy Blvd., Suite 1901
Philadelphia, PA 19103

Office of the United States Trustee
Robert N.C. Nix Federal Building
900 Market Street, Suite 320
Philadelphia, PA 19107

Denise Carlon, Esquire
KML Law Group, P.C.
701 Market Street, Suite 5000
Philadelphia, PA 19106-1532
Attorney for Creditor

Respectfully submitted:

Drema O'dell
*Pro Se*
P.O. Box 205
Edgmont, PA 19028
267-418-5177



# CLOSING INSTRUCTIONS

### GENERAL

Closing Office/Title Companies - Please update title once you receive the contract

If there is a buyer's title company and/or buyer's attorney, please reach out to their office to coordinate closing.

Please no white-out nor handwritten entries on any documents to be signed by Seller

→ Please contact the County Treasurer / Tax Collector's office to confirm there are no outstanding taxes due on the above referenced property prior to closing  Obtain a tax demand which takes  into consideration the tax exemption during the period property was owned by the seller

Please keep LRES updated on any issues that may prevent closing on time

Please use LRES in subject line for all email correspondence on the file and  include the property identification (PID)

The REO Closer assigned to the file is assigned as the Asset Manager in res net for communication and status on closings

Welcome Email with closer and title office will be provided at the time the file is placed in Under Contract

### EARNEST MONEY

The Earnest money deposit "EMD" needs to be held by the Seller's Title Company/Closing  Office  LRES does not hold these funds  The listing agent is responsible for  coordinating the transfer of EMD funds within 72 hours of receipt of this notice to the Closing  Office

Agents - the title office is included on the email when the file is placed in Under Contract  For EMD Assistance you can reach out to the closer assigned to the file as the Asset Manager or your File Manager before sending out  to the closing office

### Res Net Fee

statement  Please see example



## Closing Extensions

Extension Requests must include all bullet points below when communicating with the Seller

- Reason for extension request
- Length of extension
- Party needing the extension (Seller's Title, Buyer's Title, Buyer, Lender, etc )

PLEASE NOTE. Any delays will result in the buyer having to pay the daily late fee per the contract This can also result in cancellation of contract and the seller retaining the earnest money deposit

## SELLER'S VESTING-  This was added to the general instructions.

The seller's vesting may change from what is reflected on the recorded foreclosure deed.
A GAP Deed may be required, LRES will provide instructions as to how to prepare the GAP deed prior to closing.
Please verify the vesting prior to preparing the deed to avoid possible deed revisions  Please contact the closer to confirm the vesting information

## DEED

The Deed for closing needs to be submitted to seller for signature as soon as possible and at least 6  days prior to closing per the SLA with the client

**The Deed package must be uploaded to RESNET AND ALSO emailed to the LRES Asset Manager assigned to the file in Res Net.**

→ Deed should be Special Warranty Deeds  Please note if state requires another deed format.

→ Pull the seller vesting and address from the recorded deed showing them in title / FCD

→ Do not enter any state or county for the notary section

→ Legal description, seller name and address should match the FCD or addenda

→ Buyer(s) name, sales price and asset address should match the contract, addenda, and deed for close.

work, and shipping label to return the deed to you for close. THESE SHOULD BE ATTACHED SEPARATELY TO THE EMAIL, NOT AS ONE MERGED DOCUMENT TO SORT OUT.

→ Original POA's must be requested when you submit your deed package for signature, high lighting verbiage in yellow and include a UPS Label. We ask that you please check your county for existing copies first.

→ If the county requires a legal-size format, please fix settings as such, so the client only has to "press print" to get the legal size

→ If revisions are requested and you need to resubmit the deed package, please resubmit all as if original request, (e.g. all attachments and original POA request highlighted in yellow)

## HUD/CD/Settlement Statement

All HUD / Settlement Statements should be submitted to LRES within 48 hours prior to close for approval. Please send the HUD to the assigned closer to the file. The closer is the Asset Manager assigned to the file in res net

- ✓ Closing is NOT permitted without a Seller approved HUD at any time
- ✓ Commission structure- LRES Asset Manager to provide to closing office at the time the property is placed under Contract

- ✓ Please include all appropriate backup for charges included on the HUD (taxes, utility bills, HOA's, Violations etc.).

- ✓ Utilities can only be on the final HUD if it is a lien and or judgment. Backup MUST be provided "notices, statement, dates etc." Otherwise, they must be paid outside of closing and MUST obtain client approval

  **NOTE: Liens on the HUD need prior seller approval.**

- ✓ Please contact the County Treasurer / Tax Collector's office for outstanding taxes due on the property. Obtain a tax demand/statement and pro-rate taxes accordingly for closing and provide tax back-up with the HUD

## FINAL CLOSING DOCUMENTS

The Final HUD/Settlement Statement and Wire Confirmation are due within 24-48 hours from the closing date

**The Title Company / Closing Office needs to upload the Final Docs to Res.Net AND email the Final Docs to all parties ( Asset manager, File Manager, ALL Closers Sonia / Lisaun and Shameka, Tonya and Ryan) this information is provided on HUD executed email.**

HUD/Settlement Statement and Wire Confirmation together and confirm that it Matches the Sellers Signed HUD

Include full address and loan number (not PID)

---

### Post Close - Refund Checks

Look at LRES Referral Wiring instructions

**PLEASE NOTE:  Wiring instructions will always be sent via encrypted email.**

**COUNTER OFFER/ADDENDUM** Loan # 300052?



*THIS IS INTENDED TO BE A LEGALLY BINDING AGREEMENT*
*READ IT CAREFULLY*

Reference is made to the Real Estate Purchase Contract and receipt for deposit dated <u>07 30, 2020</u> pertaining to the Real Property known as <u>1801 Whispering Brooke Drive, newtown Square, PA  19073</u> made between <u>DREMA O'DELL</u> hereafter referred to as "Buyer", and <u>Cascade Non HUD insured</u> "Seller".

<u>Sales price to be $275,000. Sale to close 30 calendar days from date of Seller's signed  acceptance on this counter offer addendum, or sooner by written mutual agreement.  Buyer agrees to pay $50 per diem if transaction does not close as stated above by no  fault of the Seller. If an extension is requested by Buyer a non-refundable deposit will be required.  Buyer to complete all inspections within 1 calendar days from Seller's signed acceptance. This offer is subject to final Investor/Seller approval.   Earnest deposit to be $1,000.    As Is sale. Seller will not pay for any repairs/inspections. All future fees are to be prorated to the closing date. Acceptance is subject to seller execution. Buyer pays owner's title policy, transfers, and recording fees in addition, if buyer choose title/closer, buyer pays both seller/buyer's closing fees. Buyer to provide proof of funds to close with offer. Buyer's Earnest Money shall be deposited with the Seller's attorney/title company within 48 hours of the effective date of the contract. Buyer is aware the foreclosure deed is not recorded and agrees to proceed with the contract and extend the closing date if needed. Buyer is responsible for turning on utilities for all inspections. *OCCUPIED SALE*</u>

Standard clauses to be made a permanent part of this contract:
- Offer Processing Fee of $150.00 shall be paid by Buyer's Agent
  Closing Agent: Deliver Payment to:  RES.NET, 25520 Commercentre Dr. #150, Lake Forest, CA 92630
- Buyer(s) agrees to deliver to Seller/Seller's agent signed purchase contract and Addenda
  within 1 (day) calendar days of Buyer's signature.
- **Seller will not pay for nor credit Buyer(s) for VA, FHA or other loan/financing costs or fees; nor will they pay for or credit any other costs, fees, survey, home warranty plan, inspections or repairs unless otherwise stated and defined above.**
- This contract cannot be extended or assigned without prior written approval from Seller.
  Seller will not provide financing. Property taxes shall be prorated to day of closing.
- It is understood between Buyer(s) and Seller that this property is being sold in "Where-is, As-is" condition with no Seller representations or warranties, expressed or implied, by the Seller, Cascade Non HUD insured, LRES or the local listing agent.
- Buyer(s) to sign Seller's Addenda to be made part of original contract.
- Seller to advise who will have choice of Title/Escrow/Closing entity once property is under contract.
- In the event of a per diem charge, Buyer authorizes Seller to debit their escrow deposit to cover said charge(s).

Unless this counter offer is accepted by the Buyer(s) by <u>July 31, 2020</u> this offer shall be deemed revoked. Seller reserves the right to continue to market said property and accept any contract of Seller's choosing prior to Seller's written acceptance of contract and counter offer/addendum(s).

**This transaction is subject to acceptance and execution of the original purchase contract/ sales agreement and this counter offer addendum by Cascade Non HUD insured, "Seller".**

All other terms and conditions shall remain the same. This counter offer addendum supersedes all other counter addenda and the purchase contract/sales agreement. This counter offer addendum is accepted by the Buyer(s) and the Seller, as evidenced by Buyer(s) and Seller's signature hereon. This counter offer addendum shall hereby become part of the above referenced contract between the parties.
**Acceptance:** Buyer(s) accepts the above counter offer and acknowledges receipt thereof:

_O Dell_        _09/07/20_
Buyer                Date

_____      _____
Buyer                Date
**Acceptance:** Seller accepts the above counter offer and acknowledges receipt thereof:
Cascade Non HUD Insured

By: _Tina Gomez_        Date: _10/22/2020_
Tina Gomez/LRES, attorney in fact for
Cascade Funding RM1 Alternative Holdings, LLC

# EXHIBIT A

rpO0r_LRES

REO Escrow / Closing for Buyers Choice

Property address: _1801 Whispering Brooke_ City / State _Newtown Sq., PA 19073_
_UPI 54-08-0073_

~~Buyers elect to choose Sellers designated settlement / closing company and Title~~

Buyers Initials: _____      Selling / Buyer's Agent initials: _____

Or

Buyers elect to choose its own Settlement / Closing Company and Title

Buyers Initials: _djo_____      Selling / Buyer's Agent initials: _____

BUYERS CLOSING OFFICE CONTACT INFO
NAME OF CONTACT: _Frone Crawford, JR_____
COMPANY NAME: _____
PHONE NUMBER: _610-547 5547_____
EMAIL ADDRESS: _fcrawford@fcrawfordlaw.com_____

COUNTER OFFER/ADDENDUM Loan #  3000527



*THIS IS INTENDED TO BE A LEGALLY BINDING AGREEMENT*
*READ IT CAREFULLY*

## ADDENDUM A

THIS ADDENDUM IS ATTACHED TO AND MADE PART OF THE REAL ESTATE PURCHASE CONTRACT,
HEREINAFTER REFERRED TO AS "CONTRACT", BETWEEN THE UNDERSIGNED PARTIES CONCERNING THE
PROPERTY AT:
ADDRESS:     1801 Whispering Brooke Drive, newtown Square, PA
19073   UPI 54 - 08 - 0073

1.    In the event there is a conflict between the terms of the Contract and this Addendum, the terms of this Addendum shall apply and shall supersede and replace anything to the contrary.

2.    Buyer(s) agrees that title will be conveyed by Special Warranty Deed.

3.    Seller will advise as to the selection of the closing attorney/title company and will instruct him/her to order all title work and prepare all documents necessary to close this sale.

4.    If financing is involved, Buyer(s) shall apply for a loan within five (5) calendar days from the effective date of the Contract (Seller's signature date on counter offer) and be approved within twenty-five (25) calendar days from the date of application, or the Contract shall become null and void at Seller's option.

5.    If any repairs are made part of the Contract, they shall not be initiated until Buyer(s) has received written loan approval and Seller has authorized work to commence in writing.

6.    Property taxes, bonds and assessments, and any future fees shall be prorated to the day of closing.

7.    Occupancy of the subject property shall not be permitted prior to closing.

8.    Buyer(s) shall make a complete inspection of subject property within the time frame specified in the counter offer addendum. In no event will Seller be obligated for any repairs or replacements unless Seller has agreed in writing to make repairs, and/or credits as specified in the counter offer addendum

9.    Buyer(s) acknowledges that subject property was acquired by the Seller as a result of a foreclosure sale or by deed in lieu of foreclosure and that Seller has not occupied this property and has no personal   knowledge of its condition or of the existence of any defects.  Personal property is not considered part of      this Contract.

10.   Buyer(s) acknowledges that the terms and condition of the Contract and this Addendum shall not survive the closing.

11.   Closing of this sale constitutes acceptance by Buyer(s) of condition of property and Seller shall have no further liability thereon.

12)   If buyer chooses title/closer, buyer will be responsible for paying title/closing costs for both buyer and seller's title and closing fees

13)   Seller shall have no obligation to provide Buyer with a home warranty policy.

14)   Buyer understands that as a result of any city, county or other inspection Buyer may be required to make repairs and/or modifications to the Property in order to comply with governmental requirements including, but not limited to, housing, building, health, safety or other requirements. If the Property requires repairs and/or modifications in order to comply with governmental requirements Buyer shall be solely responsible for performing such repairs and modifications at Buyer's sole cost and expense after the closing.

15)   RIGHT TO TERMINATE: Seller shall have the absolute and unilateral right to terminate the Contract at any time prior to and including the date of closing, without cause, upon written notification delivered to the Buyer. In the event Seller exercises their right to terminate the Contract, the Buyer's sole remedy shall be to receive a return of the Buyer's Earnest Money deposit, and the parties shall thereafter be relieved of all obligations under the terms of this contract and all addenda.

16)   Utilities will not be turned on due to government agency guidelines. Buyer may turn on utilities at their expense to perform inspection if necessary.

17)   Acceptance of this offer is subject to seller execution .

Buyer(s):                                         Seller:

_Cuma O'Dell_                              _Tina Gomez_          10/22/2020

Tina Gomez, LRES, Attorney in fact for
Cascade Funding RM1 Alternative Holdings, LLC          rpO8_LRES



*THIS IS INTENDED TO BE A LEGALLY BINDING AGREEMENT*
*READ IT CAREFULLY*

_____
date

_____                                        _____
date                                                                                    date

## ADDENDUM B

### "AS IS" PROVISION

Addendum to Purchase Contract or Counter Offer dated _____ 07 30, 2020 _____ for the property located at _____ *1801* *Whispering Brooke Drive, newtown Square, PA  19073* _____. Buyer is aware that Seller acquired the property which is the subject of this transaction by way of foreclosure, and that Seller is selling and Buyer is purchasing the property in its present "AS IS" CONDITION WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY NATURE".

Buyer acknowledges for Buyer and Buyer's successors, heirs and assignees, that Buyer has been given a reasonable opportunity to inspect and investigate the property and all improvements thereon, either independently or through agents of Buyer's choosing, and that in purchasing the property Buyer is not relying on Seller, or its agents, as to the condition or safety of the property and/or any improvements thereon, including, but not necessarily limited to, electrical, plumbing, heating, sewage, roof, air conditioning, if any, foundations, soils, and geology, lot size or suitability of the property and/or improvements for particular purposes, or that appliances, if any, plumbing and/or in compliance with any City, County, State and/or Federal statutes, codes or ordinances. Any reports, repairs, or work required by Buyer's Lender are to be the sole responsibility of the Buyer.

Seller does not warrant existing structure as to its habitability or suitability for occupancy. Buyer(s) assumes responsibility to check with appropriate planning authority for intended use and holds the Seller and Broker, if applicable, harmless as to suitability for Buyer(s) intended use.

Buyer(s) further states that they are relying solely upon their own inspection of subject property and not upon any representation made to them by any person whomsoever, and is purchasing subject property in the condition in which it now is, without any obligation on the part of the Seller to make any changes, alterations, or repair thereto.
Seller gives no warranties of fitness regarding such personal property that belongs to Seller which is transferred as part of the purchase.

Every Buyer(s) of any interest in residential property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the Purchaser with any information on lead-based paint hazards from risk assessment or inspections in the Seller's possession and notify the Buyer(s) of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

The closing of this transaction shall constitute an acknowledgment by the Buyer(s) that THE PREMISES WERE ACCEPTED WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND OR NATURE AND IN ITS PRESENT "AS IS" CONDITION BASED SOLELY ON BUYER'S OWN INSPECTION.

Buyer(s):                                                          Seller:

_____                        _____
*Leura O W.ell*                                                *Tina Gomez*          10/22/2020
date                                                                                    date
*8-17-2020*                                          Tina Gomez, LRES, attorney in fact for
_____                        Cascade Funding RM1 Alternative Holdings, LLC
date

**COUNTEROFFER/ADDENDUM    LOAN #3000527**
**THIS IS INTENDED TO BE A LEGALLY BINDING AGREEMENT.**
**READ IT CAREFULLY.**

---

### ADDENDUM "C"

---

Notwithstanding anything to the contrary, as set forth in the Agreement and/or Addendums "A" or "B," the following exceptions thereto are agreed upon between Seller and Buyer:

1.    All transfer taxes assessed by state and local authorities will be divided equally between Buyer and Seller.

2.    Paragraph 15 ("Right to Terminate"), as set forth in Addendum "A" is hereby deleted.

**BUYER:**                                              **SELLER:**

_Leesa ODell_                                   _____

Date:___09/07/20___                        Date:_____

REO Escrow / Closing for Buyers Choice

Property address: _1801 Whispering Beooke_ City / State _Newtown Sq., PA 19023_

Buyers elect to choose Sellers designated settlement / closing company and Title

Buyers Initials: _____        Selling / Buyer's Agent initials: _____

Or

Buyers elect to choose its own Settlement / Closing Company and Title

Buyers Initials: _dyd_        Selling / Buyer's Agent initials: _____

BUYERS CLOSING OFFICE CONTACT INFO
NAME OF CONTACT _FRONE CRAWford, JR_
COMPANY NAME _____
PHONE NUMBER _610 547 5547_
EMAIL ADDRESS _fCRAWford @ fCRAWford law Com_

# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

ASR

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR)

| PARTIES | |
|---|---|

**BUYER(S):** Drema O'Dell

**SELLER(S):** ~~DITF Bank, N.A.~~  ~~CASCADE NON HUD INSURED~~
Cascade Funding RM1 Alternative Holdings, LLC  *TG*

**BUYER'S MAILING ADDRESS:**
P.O. Box 205, Edgemont, PA 19028

**SELLER'S MAILING ADDRESS:**

| PROPERTY | |
|---|---|

**ADDRESS** (including postal city)  1801 Whispering Brooke Drive
Newtown Square, PA                                                              ZIP  19073
in the municipality of  Willistown Township                              , County of  Chester
in the School District of  Great Valley Schools                          , in the Commonwealth of Pennsylvania.
Tax ID #(s): Part of 54-8-73; PIN 54-8-1801                                                                and/or
Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date):
54-08-0073

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☑ **No Business Relationship (Buyer is not represented by a broker)**

Broker (Company) _____

Company License # _____
Company Address _____

Company Phone _____
Company Fax _____
Broker is (check only one):
☐ Buyer Agent (Broker represents Buyer only)
☐ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) _____

State License # _____
Direct Phone(s) _____
Cell Phone(s) _____
Email _____
Licensee(s) is (check only one):
☐ Buyer Agent (all company licensees represent Buyer)
☐ Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer)
☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Seller is not represented by a broker)**

Broker (Company) _____

Company License # _____
Company Address _____

Company Phone _____
Company Fax _____
Broker is (check only one):
☐ Seller Agent (Broker represents Seller only)
☐ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) _____

State License # _____
Direct Phone(s) _____
Cell Phone(s) _____
Email _____
Licensee(s) is (check only one):
☐ Seller Agent (all company licensees represent Seller)
☐ Seller Agent with Designated Agency (only Licensee(s) named above represent Seller)
☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

**By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.**

**Buyer Initials:** _____         **ASR Page 1 of 14**         **Seller Initials:** *TG*

Pennsylvania Association of Realtors'

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2020
rev. 11/19; rel. 1/20

1  1. **By this Agreement**, dated _____
2  **Seller** hereby agrees to sell and convey to **Buyer**, who agrees to purchase, the identified **Property**.
3  2. **PURCHASE PRICE AND DEPOSITS (4-14)**
4     (A)  Purchase Price $ 275,000.00
5         ( Two hundred and Seventy-Five Thousand
6                                                                                            U.S. Dollars), to be paid by Buyer as follows:
7         1.  Initial Deposit, within _____ days (5 if not specified) of Execution Date,
8             if not included with this Agreement:                                    $ 1,000.00  *payable Vendor Connect*
9         2.  Additional Deposit within _____ days of the Execution Date:            $
10        3.  _____                            $                              *dji*
11        Remaining balance will be paid at settlement.
12    (B)  **All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer**
13        **within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by per-**
14        **sonal check.**
15    (C)  Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____
16        _____ ),
17        who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or
18        termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations
19        of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this
20        Agreement.
21  3. **SELLER ASSIST (If Applicable) (1-10)**
22     Seller will pay $ _____ or _____ % of Purchase Price (0 if not specified) toward
23     Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is
24     approved by mortgage lender.
25  4. **SETTLEMENT AND POSSESSION (4-14)**
26     (A)  Settlement Date is _____ , or before if Buyer and Seller agree.
27     (B)  Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless
28         Buyer and Seller agree otherwise.
29     (C)  At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable:
30         current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer
31         fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will
32         pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:
33         _____
34     (D)  For purposes of prorating real estate taxes, the "periods covered" are as follows:
35         1.  Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
36         2.  School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December
37             31. School tax bills for all other school districts are for the period from July 1 to June 30.
38     (E)  Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
39         _____
40     (F)  Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
41         _____
42     (G)  Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures
43         broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property
44         is subject to a lease.
45     (H)  If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and
46         assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement.
47         Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer
48         will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless stated in this
49         Agreement.
50         ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.
51  5. **DATES/TIME IS OF THE ESSENCE (1-10)**
52     (A)  Written acceptance of all parties will be on or before: _____
53     (B)  The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the
54         essence and are binding.
55     (C)  The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by
56         signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, exclud-
57         ing the day this Agreement was executed and including the last day of the time period. **All changes to this Agreement should be**
58         **initialed and dated.**
59     (D)  The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agree-
60         ment of the parties.
61     (E)  Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms
62         and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable
63         to all parties, except where restricted by law.

64  Buyer Initials: __*dji*__                                      **ASR Page 2 of 14**                                      Seller Initials: __*TG*__

**6. ZONING (4-14)**

Failure of this Agreement to contain the zoning classification (except in cases where the property {and each parcel thereof, if subdividable} is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.

**Zoning Classification, as set forth in the local zoning ordinance:** Residential

**7. FIXTURES AND PERSONAL PROPERTY (1-20)**

(A) It is possible for certain items of personal property to be so integrated into the Property that they become fixtures and will be regarded as part of the Property and therefore included in a sale. Buyer and Seller are encouraged to be specific when negotiating what items will be included or excluded in this sale.

(B) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens, and other items including plumbing; heating; gas fireplace logs; radiator covers; hardwired security systems; thermostats; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners; built-in appliances; the range/oven; dishwashers, trash compactors; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, solar panels, windmills, water treatment systems, propane tanks and satellite dishes. Unless stated otherwise, the following items are included in the sale, at no additional cost: any and all personally and fixtures located within the property

(C) The following items are not owned by Seller and may be subject to a lease or other financing agreement. Contact the provider/vendor for more information (e.g., solar panels, windmills, water treatment systems, propane tanks and satellite dishes): _____

(D) EXCLUDED fixtures and items: _____

**8. MORTGAGE CONTINGENCY (10-18)**

☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency.

☑ ELECTED.

(A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $ 275,000.00 | Loan Amount $ _____ |
| Minimum Term 30 years | Minimum Term _____ years |
| Type of mortgage _____ | Type of mortgage _____ |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender _____ | Mortgage lender _____ |
| Interest rate _____ %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender**, not to exceed a maximum interest rate of _____ %. | Interest rate _____ %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender**, not to exceed a maximum interest rate of _____ %. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

(B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage application(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case no later than _____ .

  1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing.

  2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s):
    a. Does not satisfy the terms of Paragraph 8(A), OR
    b. Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within 7 DAYS after the date indicated in Paragraph 8(B), or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).

  3. If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement,

Buyer Initials: _dw_          ASR Page 3 of 14          Seller Initials: _TG_

all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).

(C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher or lower than the Purchase Price and/or market price of the property.

(D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s), Buyer will do so at least _____15_____ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage lender(s) to make the above mortgage term(s) available to Buyer.

(E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage application (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process. Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan application.

(F) **Buyer will be in default of this Agreement if Buyer** furnishes false information to anyone concerning Buyer's financial and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to reject, or refuse to issue, a mortgage loan commitment.

(G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within _____5_____ DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's expense.

　　1.  If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.

　　2.  If Seller will not make the required repairs, **or if Seller fails to respond within the stated time,** Buyer will, within _____5_____ DAYS, notify Seller of Buyer's choice to:

　　　　a.  Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable). OR

　　　　b.  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

　　**If Buyer fails to respond** within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice to Seller within that time, **Buyer will accept the Property,** make the required repairs/improvements at Buyer's expense and agree to the RELEASE in Paragraph 28 of this Agreement.

---

### FHA/VA, IF APPLICABLE

(H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $ _____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.

**Warning:** Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department, makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years, or both."

(I) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement**
　　☐  Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that FHA will not perform a home inspection nor guarantee the price or condition of the Property.

(J) **Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in connection with this transaction is attached to this Agreement.

---

Buyer Initials: _dju_                    ASR Page 4 of 14                    Seller Initials: _TG_

9. **CHANGE IN BUYER'S FINANCIAL STATUS (1-9)**

If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation; entry of a judgment against Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to purchase.**

10. **SELLER REPRESENTATIONS (1-20)**

(A) **Status of Water**

Seller represents that the Property is served by:

☐ Public Water     ☐ Community Water     ☑ On-site Water     ☐ None     ☐ _____

(B) **Status of Sewer**

1. Seller represents that the Property is served by:

☑ Public Sewer     ☐ Community Sewage Disposal System     ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)

☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)     ☐ Holding Tank (see Sewage Notice 3)

~~☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)~~

☐ None (see Sewage Notice 1)     ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)

2. **Notices Pursuant to the Pennsylvania Sewage Facilities Act**

**Notice 1: There is no currently existing community sewage system available for the subject property.** Section 7 of the Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter, repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The local agency charged with administering the Act will be the municipality where the Property is located or that municipality working cooperatively with others.

**Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions of Section 7 of the Pennsylvania Sewage Facilities Act.** (Section 7 provides that a permit may not be required before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.

**Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site.** Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank from the date of its installation or December 14, 1995, whichever is later.

**Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the distance specified by regulation.** The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the horizontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the absorption area shall be 100 feet.

**Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations.** Sewage facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.

(C) **Historic Preservation**

Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____
_____

(D) **Land Use Restrictions**

1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the following Act(s) (see Notices Regarding Land Use Restrictions below):

☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. §901 et seq.)

☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)

☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)

☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)

☐ Other _____

2. **Notices Regarding Land Use Restrictions**

a. **Pennsylvania Right-To-Farm Act:** The property you are buying may be located in an area where agricultural operations take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.

b. Clean and Green Program: Properties enrolled in the Clean and Green Program receive preferential property tax assessment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that may result in the future as a result of any change in use of the Property or the land from which it is being separated.

Buyer Initials: _CW_     ASR Page 5 of 14     Seller Initials: _TG_

    c. **Open Space Act:** This Act authorizes counties to enter into agreements with owners of land designated as farm, forest, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.

    d. **Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

(E) **Real Estate Seller Disclosure Law**

    Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale of condominium and cooperative interests.

(F) **Public and/or Private Assessments**

    1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____
_____

    2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____
_____

(G) **Highway Occupancy Permit**

    Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

(H) **Internet of Things (IoT) Devices**

    1. The presence of smart and green home devices that are capable of connecting to the Internet, directly or indirectly, and the data stored on those various devices make up a digital ecosystem in the Property sometimes referred to as the "Internet of Things (IoT)." Buyer and Seller acknowledge that IoT devices may transmit data to third parties outside of the control of their owner.

    2. On or before settlement, Seller will make a reasonable effort to clear all data stored on all IoT devices located on the Property and included in the sale. Seller further acknowledges that all personal devices owned by Seller (including but not limited to cellular telephones, personal computers and tablets) having connectivity to any IoT device(s) located on the Property will be disconnected and cleared of relevant data prior to settlement. Further, no attempts will be made after settlement by Seller or anyone on Seller's behalf to access any IoT devices remaining on the Property.

    3. Following settlement, Buyer will make a reasonable effort to clear all stored data from any IoT device(s) remaining on the Property and to restrict access to said devices by Seller, Seller's agents or any third party to whom Seller may have previously provided access. This includes, but is not limited to, restoring IoT devices to original settings, changing passwords or codes, updating network settings and submitting change of ownership and contact information to device manufacturers and service providers.

    4. This paragraph will survive settlement.

11. **WAIVER OF CONTINGENCIES (9-05)**

If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, **Buyer's failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.**

12. **BUYER'S DUE DILIGENCE/INSPECTIONS (10-18)**

(A) **Rights and Responsibilities**

    1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate licensee(s) may attend any inspections.

    2. Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the condition of the Property is as required by this Agreement and any addenda. Buyer's right to these inspections is not waived by any other provision of this Agreement.

    3. **Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.**

    4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.

    5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.

Buyer Initials: _dy_                    ASR Page 6 of 14                    Seller Initials: _TJ_

323  (B)  Buyer waives or elects at Buyer's option to have the physical conditions, certifications, and investigations (referred to as
324  "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly
325  licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same
326  inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D)
327  for Notices Regarding Property and Environmental Inspections)

328  (C)  For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections. obtain any
329  Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit
330  a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

**Home/Property Inspections and Environmental Hazards (mold, etc.)**

| Elected | | Waived |
|---|---|---|

332  **Elected** — Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior — **Waived**
333  doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances;
334  electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetra-
335  tion; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environ-
336  mental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer
337  ~~may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the~~
338  ~~home inspection must be performed by a full member in good standing of a national home inspection association,~~
339  ~~or a person supervised by a full member of a national home inspection association, in accordance with the ethical~~
340  standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or
341  architect. (See Notices Regarding Property & Environmental Inspections)

342  **Wood Infestation**
343  **Elected** — Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a — **Waived**
344  wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided
345  by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mort-
346  gage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be
347  limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection
348  reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesti-
349  cide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer
350  may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to
351  structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.

352  **Deeds, Restrictions and Zoning**
353  **Elected** — Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi- — **Waived**
354  nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the
355  Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking)
356  is permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____
357  _____

358  **Water Service**
359  **Elected** — Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise — **Waived**
360  qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will
361  locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous
362  condition, at Seller's expense, prior to settlement.

363  **Radon**
364  **Elected** — Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection — **Waived**
365  Agency (EPA) advises corrective action if the average annual exposure is equal to or higher than 0.02
366  working levels or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground
367  by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas
368  can increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a
369  house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any
370  person who tests, mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department
371  of Environmental Protection. Information about radon and about certified testing or mitigation firms is available
372  through Department of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State
373  Office Building, P.O. Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov

374  **On-lot Sewage (If Applicable)**
375  **Elected** — Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic — **Waived**
376  load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's
377  expense, will locate, provide access to, empty the individual on-lot sewage disposal system and provide all water
378  needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense,
379  prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection
380  Contingency.

381  **Property and Flood Insurance**
382  **Elected** — Buyer may determine the insurability of the Property by making application for property and casualty insurance — **Waived**
383  for the Property to a responsible insurer. Broker for Buyer, if any. otherwise Broker for Seller, may communicate
384  with the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone,
385  Buyer may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more
386  prior to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood

387  Buyer Initials: _dp_                ASR Page 7 of 14                Seller Initials: _TG_

388  insurance premiums or require installation of former mitigation devices. Buyer should consult with one or more
389  flood insurance agents regarding the need for flood insurance and possible premium increases.

390  **Property Boundaries**
391  Elected     Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal    Waived
392  _____    description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property
393  surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural
394  or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical represen-
395  tations of size of property are approximations only and may be inaccurate.

396  **Lead-Based Paint Hazards (For Properties built prior to 1978 only)**
397  Elected     Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct    Waived
398  _____    a risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint
399  hazards. **Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard**
400  **Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved**
401  **lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a**
402  **separate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and**
403  **any lead-based paint records regarding the Property.**

404  **Other**
405  Elected     _____    Waived
406  _____

407  The Inspections elected above do not apply to the following existing conditions and/or items: _____
408  _____
409  _____

410  (D)  **Notices Regarding Property & Environmental Inspections**
411  1.  Exterior Building Materials: Poor or improper installation of exterior building materials may result in moisture penetrating
412  the surface of a structure where it may cause mold and damage to the building's frame.
413  2.  Asbestos: Asbestos is linked with several adverse health effects, including various forms of cancer.
414  3.  Environmental Hazards: The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal
415  of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's respon-
416  sibility to dispose of them properly.
417  4.  Wetlands: Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer
418  to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop
419  the property would be affected or denied because of its location in a wetlands area.
420  5.  Mold, Fungi and Indoor Air Quality: Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores,
421  pollen and viruses) have been associated with allergic responses.
422  6.  Additional Information: Inquiries or requests for more information about asbestos and other hazardous substances can be
423  directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C.
424  20460. (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health,
425  Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health
426  and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by
427  calling 1-877-724-3258.

428  **13. INSPECTION CONTINGENCY (10-18)**
429  (A)  The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected
430  in Paragraph 12(C).
431  (B)  **Within the stated Contingency Period** and as the result of any Inspection elected in Paragraph 12(C), except as stated in
432  Paragraph 13(C):
433  1.  If the results of the inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer WILL **present all Report(s) in**
434  **their entirety to Seller, accept the Property with the information stated in the Report(s) and agree to the RELEASE in**
435  **Paragraph 28 of this Agreement,** OR
436  2.  If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in**
437  **their entirety to Seller and terminate this Agreement** by written notice to Seller, with all deposit monies returned to Buyer
438  according to the terms of Paragraph 26 of this Agreement, OR
439  3.  If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in**
440  **their entirety to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by**
441  **Buyer.**
442  The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform
443  the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of
444  the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or
445  governmental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.
446  a.  Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation
447  Period. During the Negotiation Period:
448  (1)  Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR
449  (2)  Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improve-
450  ments to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
451  If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable

452  Buyer Initials: _____                    ASR Page 8 of 14                    Seller Initials: _____

453      written agreement, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement and the
454      Negotiation Period ends.

455          b.    If no mutually acceptable written agreement is reached, or if Seller fails to respond, during the Negotiation Period, within
456                 _____ days (2 if not specified) **following the end of the Negotiation Period,** Buyer will:

457                 (1)    Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this
458                      Agreement, OR

459                 (2)    Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
460                      of Paragraph 26 of this Agreement.

461          **If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this Agreement**
462          **by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree**
463          **to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation**
464          **Period.**

465    (C)   If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____
466        days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to,
467        ~~the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected~~
468        completion date for corrective measures. Within    5    DAYS of receiving Seller's Proposal, or **if no Proposal is provided within**
469        **the stated time,** Buyer will notify Seller in writing of Buyer's choice to:

470        1.    Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR

471        2.    Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
472            Paragraph 26 of this Agreement, OR

473        3.    Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by
474            any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time
475            required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the
476            Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct
477            the defects, Buyer may, within    5    DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all
478            deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

479        **If Buyer fails to respond** within the time stated in Paragraph 13(C) **or fails to terminate** this Agreement by written notice to
480        Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

481   **14. TITLES, SURVEYS AND COSTS (9-18)**

482    (A)   Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will order from a reputable title company
483        for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report
484        to Seller.

485    (B)   Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different
486        from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance
487        policies come in standard and enhanced versions; **Buyer should consult with a title insurance agent about Buyer's options.**
488        Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an
489        owner's title insurance policy.

490    (C)   Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
491        (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees
492        and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.

493    (D)   Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal descrip-
494        tion of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or
495        required by the mortgage lender will be obtained and paid for by Buyer.

496    (E)   The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the reg-
497        ular rates, free and clear of all liens, encumbrances, and easements, **excepting however** the following: existing deed restrictions;
498        historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the
499        ground; easements of record; and privileges or rights of public service companies, if any.

500    (F)   In the event of a change in Seller's financial status affecting Seller's ability to convey title to the Property on or before the
501        Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes,
502        but is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment
503        against Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer
504        sufficient to satisfy all liens and encumbrances against the Property.

505    (G)   If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates,
506        as specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned
507        to Buyer according to the terms of Paragraph 26 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs
508        incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items
509        specified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).

510    (H)   Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation
511        about the status of those rights unless indicated elsewhere in this Agreement.

512        ☐ **Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.**

513   Buyer Initials: _dji_                     ASR Page 9 of 14                     Seller Initials: _TG_

(I)  **COAL NOTICE (Where Applicable).** THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDER-NEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COM-PLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsid-ence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

(J)  The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here: _____

(K)  1.  This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____
☐  **Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.**

2.  **Notices Regarding Private Transfer Fees:** In Pennsylvania, Private Transfer Fees are defined and regulated in the Private Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obli-gation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed, the Act gives certain rights and protections to buyers.

**15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)**

(A)  In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are received after Seller has signed this Agreement and before settlement, Seller will within ___5__ DAYS of receiving the notices and/or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:

1.  Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR

2.  Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or **fails within the stated time to notify Buyer whether Seller will comply,** Buyer will notify Seller in writing within ___5___ DAYS that Buyer will:

a.  Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in Paragraph 28 of this Agreement, OR

b.  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

**If Buyer fails to respond** within the time stated in Paragraph 15(A)(2) **or fails to terminate** this Agreement by written notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

(B)  If required by law, within ___30__ DAYS from the Execution Date of this Agreement, but in no case later than ___15__ DAYS prior Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department/s disclosing notice of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to Seller.

1.  Within ___5__ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a copy of the notice to Buyer and notify Buyer in writing that Seller will:

a.  Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR

b.  Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will notify Seller in writing within ___5__ DAYS that Buyer will:

(1)  Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph 28 of this Agreement and make the repairs at Buyer's expense after settlement, OR

(2)  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

**If Buyer fails to respond** within the time stated in Paragraph 15(B)(1)(b) **or fails to terminate** this Agreement by writ-ten notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement, and **Buyer accepts the responsibility to perform the repairs/improvements** according to the terms of the notice provided by the municipality.

2.  If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller will perform all repairs/improvements as required by the notice at Seller's expense. **Paragraph 15(B)(2) will survive settlement.**

**16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)**

(A)  Property is NOT a Condominium or part of a Planned Community unless checked below.
☐  **CONDOMINIUM.** The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407 of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.

Buyer Initials: _dji_                    **ASR Page 10 of 14**                    Seller Initials: _TG_

☑ PLANNED COMMUNITY (HOA/POA):  The Property is part of a planned community as defined by the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the declaration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions set forth in Section 5407(a) of the Act.

(B) **THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY:**

If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant), Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.

(C) **THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY:**

1. Within ___15___ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides that the association is required to provide these documents within 10 days of Seller's request.

2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the association in the Certificate.

3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.

4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender.

**17. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**

In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a property at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the property and result in a change in property tax.

**18. MAINTENANCE AND RISK OF LOSS (1-14)**

(A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property) specifically listed in this Agreement in its present condition, normal wear and tear excepted.

(B) If any part of the Property included in the sale fails before settlement, Seller will:
1. Repair or replace that part of the Property before settlement, OR
2. Provide prompt written notice to Buyer of Seller's decision to:
   a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender, if any, OR
   b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed part of the Property.
3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, **or if Seller fails to notify Buyer of Seller's choice,** Buyer will notify Seller in writing within ____5____ DAYS or before Settlement Date, whichever is earlier, that Buyer will:
   a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
   **If Buyer fails to respond** within the time stated in Paragraph 18(B)(3) **or fails to terminate** this Agreement by written notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

(C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not replaced prior to settlement, Buyer will:
1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

**19. HOME WARRANTIES (1-10)**

At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.

Buyer Initials: _djo_                    ASR Page 11 of 14                    Seller Initials: _TG_

**20. RECORDING (9-05)**

This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

**21. ASSIGNMENT (1-10)**

This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

**22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**

(A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the Commonwealth of Pennsylvania.

(B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

**23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**

The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons purchasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold, you may be held liable for the tax.

**24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**

The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing for community notification of the presence of certain convicted sex offenders. **Buyers are encouraged to contact the municipal police department or the Pennsylvania State Police** for information relating to the presence of sex offenders near a particular property, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.

**25. REPRESENTATIONS (1-10)**

(A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(B) Unless otherwise stated in this Agreement, Buyer has inspected the Property (including fixtures and any personal property specifically listed herein) **before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT CONDITION,** subject to inspection contingencies elected in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein.

(C) Any repairs required by this Agreement will be completed in a workmanlike manner.

(D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

**26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (4-14)**

(A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID. Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

(B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:

　1.　If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

　2.　If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.

　3.　According to the terms of a final order of court.

　4.　According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))

(C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days (180 if not specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the subject of litigation or mediation. If Broker has received verifiable written notice of litigation prior to the receipt of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation for any portion of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after a distribution is made.

(D) Buyer and Seller agree that a Broker(s) who distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.

(E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
1. Fail to make any additional payments as specified in Paragraph 2, OR
2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or financial status, OR
3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

(F) **Unless otherwise checked in Paragraph 26(G),** Seller may elect to retain those sums paid by Buyer, including deposit monies:
1. On account of purchase price, OR
2. As monies to be applied to Seller's damages, OR
3. As liquidated damages for such default.

(G) ☐ **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.**

~~(H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.~~

(I) Brokers and licensees are not responsible for unpaid deposits.

## 27. MEDIATION (1-10)

Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies, to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation system offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.

## 28. RELEASE (9-05)

**Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands,** including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

## 29. REAL ESTATE RECOVERY FUND (4-18)

A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658.

## 30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)

(A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s) and Closing Disclosure(s) upon receipt.

(B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant to Paragraph 16.** If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless otherwise agreed to by the parties.

## 31. HEADINGS (4-14)

The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

Buyer Initials: _dgo_

ASR Page 13 of 14

Seller Initials: _TG_

**32. SPECIAL CLAUSES (1-10)**

    (A)  **The following are attached to and made part of this Agreement if checked:**

        ☐  Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)

        ☐  Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)

        ☐  Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)

        ☐  Settlement of Other Property Contingency Addendum (PAR Form SOP)

        ☐  Appraisal Contingency Addendum (PAR Form ACA)

        ☐  Short Sale Addendum (PAR Form SHS)

        ☐  _____

        ☐  _____

        ☐  _____

    (B)  **Additional Terms:**

Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

**This Agreement may be executed in one or more counterparts,** each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

**NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

Return of this Agreement, and any addenda and amendments, including **return by electronic transmission**, bearing the signatures of all parties, constitutes acceptance by the parties.

_____ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

_____ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

_____ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before signing this Agreement.

_____ Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

BUYER Drema O'Dell _____ DATE august 17, 2020

BUYER _____ DATE _____

BUYER _____ DATE _____

Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

SELLER *Tina Gomez* _____ DATE 10/22/2020
        Tina Gomez, LRES, attorney in fact for
SELLER Cascade Funding RM1 Alternative Holdings, LLC _____ DATE _____

SELLER _____ DATE _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com        Untitled

Drema Odell
1801 Meadow Hunt L
Newtown Sq PA 19073

**0029**

63-8010/2313

Date _____ 8/17/2020

Pay to the
Order of _____ Vendor Connect _____ $ 1,000 00

One thousand & 00/100 _____ Dollars

**Citadel**
Banking with are focus You

520 Eagleview Boulevard
Exton PA 19341

SIGNATURE HAS A COLORED BACKGROUND • BORDER CONTAINS MICROPRINTING

MEMO _____

⑆231380104⑆ ⑈07000008 53 20 1⑈ 0029

# Quicken Loans®

# Drema Odell,
# You're Prequalified!

### Power Buying Process℠

 ···  ··· 

Prequalified    Verified Approval™    Rate Shield Approval

Hi Drema Odell,

Congratulations on your Prequalified Approval! This letter is for your records. Please share the enclosed **agent copy** with your real estate agent and feel free to start house hunting today.

## You're prequalified up to $275,000

| | |
|---|---|
| Account # | 3459155189 |
| Loan Program | FHA 30 Yr Fixed |
| Valid Until | 11/01/2020 |

This amount is not contingent upon the sale of another home.

We did an initial review of the income, credit and asset information you provided over the phone. This amount includes estimated property taxes and insurance.

### Track Your Status

| | |
|---|---|
| Income | Client Reported: 08/03/2020  ✕ |
| Assets | Client Reported: 08/03/2020  ✕ |
| Credit | Verified: 08/03/2020  ✓ |

## What are my next steps?

To gain more buying power, submit your remaining documentation today to get a **Verified Approval™**. Our **Verified Approval™** will allow you to make a stronger offer on the home you want. It's the next best thing to a cash offer.

By allowing us to verify more of your information, you can be even more confident you'll close on your new home. If you don't close based on our review, we'll pay you $1,000.[1]

Contact me today to get your Verified Approval™.

**Michael OConnell**
Purchase Mortgage Banker
NMLS # 1877778
Licensed in the state of Pennsylvania
(800) 226-6308, ext. 50439
Fax: (855) 902-1741
Email: MichaelOConnell@quickenloans.com

### Be Prepared with Our Home Buyer's Guide

Go to **QLguide.com** for our easy-to-use Home Buyer's Guide. This step-by-step guide will help you understand the entire mortgage process from start to finish. Be sure to check out the helpful calculators designed to ensure you're prepared for your new home purchase.

*Highest in Customer Satisfaction in the U.S.*

 

# Quicken Loans®

1050 Woodward Avenue | Detroit, MI 48226

[1]Participation in the Verified Approval program is based on an underwriter's comprehensive analysis of your credit, income, employment status, debt, property, insurance, appraisal and a satisfactory title report/search. If new information materially changes the underwriting decision resulting in a denial of your credit request, if the loan fails to close for a reason outside of Quicken Loans' control, or if you no longer want to proceed with the loan, your participation in the program will be discontinued. If your eligibility in the program does not change and your mortgage loan does not close, you will receive $1,000. This offer does not apply to new purchase loans submitted to Quicken Loans through a mortgage broker. Additional conditions or exclusions may apply.

[2]RateShield gives you a Verified Approval and allows you to lock your rate for up to 90 days. This protects you from rate increases between now and the time you find a home. Once you find your home, if rates have decreased, you'll be able to lower your rate one time; if rates have gone up, your rate will stay the same. Please contact your Home Loan Expert for additional information. This offer is only valid on certain 30-year purchase loans.

This Prequalification is valid for 90 days from the date of credit pulled. If we do not receive an executed purchase agreement within 90 days, we will regrettably be unable to give further consideration to your credit request. This Prequalification is not a final loan approval or a commitment to lend. This Prequalification is contingent on an approved loan application, which will include verification and approval of the information we received to issue this Prequalification as well as your credit, income, employment status, debt, property, insurance, appraisal and a satisfactory title report/search. If this is for a primary residence it may be contingent on the sale of your current home. Not all properties are eligible for financing. Interest rates are used for qualifying purposes only and do not constitute a rate lock commitment.

Quicken Loans received the highest score in the J.D. Power 2010 – 2019 (tied in 2017) Primary Mortgage Origination and 2014 – 2019 Primary Mortgage Servicer Studies of customers' satisfaction with their mortgage sales experience and mortgage servicer company, respectively. Visit JDPower.com/Awards.

Quicken Loans, LLC; NMLS #3030; www.NMLSConsumerAccess.org. Equal Housing Lender. Licensed in 50 states. AR, TX: 1050 Woodward Ave., Detroit, MI 48226-1906, (888) 474-0404; AZ: 1 N. Central Ave., Ste. 2000, Phoenix, AZ 85004, Mortgage Banker License #BK-0902939; CA: Licensed by Dept. of Business Oversight, under the CA Residential Mortgage Lending Act and Finance Lenders Law; CO: Regulated by the Division of Real Estate; GA: Residential Mortgage Licensee #11704; IL: Residential Mortgage Licensee #4127 – Dept. of Financial and Professional Regulation; KS: Licensed Mortgage Company MC.0025309; MA: Mortgage Lender License #ML 3030; ME: Supervised Lender License; MN: Not an offer for a rate lock agreement; MS: Licensed by the MS Dept. of Banking and Consumer Finance; NH: Licensed by the NH Banking Dept., #6743MB; NV: License #626; NJ: New Jersey – Quicken Loans, LLC, 1050 Woodward Ave., Detroit, MI 48226, (888) 474-0404, Licensed by the N.J. Department of Banking and Insurance.; NY: Licensed Mortgage Banker – NYS Banking Dept.; OH: MB 850076; OR: License #ML-1387; PA: Licensed by the Dept. of Banking – License #21430; RI: Licensed Lender; WA: Consumer Loan Company License CL-3030. Conditions may apply.

©2000 – 2020 Quicken Loans, LLC All rights reserved. Lending services provided by Quicken Loans, LLC, a subsidiary of Rock Holdings Inc. "Quicken Loans" is a registered service mark of Intuit Inc., used under license.



1050 Woodward Avenue | Detroit, MI 48226

Real Estate Agent Copy

August 3, 2020

Dear Real Estate Professional,

It's my pleasure to inform you that we have Prequalified Drema Odell, for the following home loan.

Program: FHA 30 Yr Fixed
Loan Amount: $265,375
Sales Price: $275,000
Expiration Date: 11/01/2020

This amount is not contingent upon the sale of another home.

I have reviewed a full copy of the credit report and considered all assets and income provided. A complete application package must be reviewed by our underwriting team for your client to be considered fully approved. This approval letter does not constitute an interest rate commitment.

If there is anything I can do to be of assistance, please reach out to me with the contact information provided below.

Sincerely,

**Michael OConnell**
**Purchase Mortgage Banker**
NMLS # 1877778
Licensed in the state of Pennsylvania
(800) 226-6308, ext. 50439
Fax: (855) 902-1741
Email: MichaelOConnell@quickenloans.com

WRIT OF POSSESSION (Ejectment Proceedings PRCP 3160-3165)

Filed and Attested by
PROTHONOTARY
17 Jun 2022 02:04 PM
M. Ascona

CASCADE FUNDING RM1 ALTERNATIVE
HOLDINGS, LLC
14405 Walters Road
Suite 200
Houston, TX 77014

COURT OF COMMON PLEAS

| Plaintiff | Term |

vs.

No. 2018-08540-RC

DREAMA O'DELL
and OCCUPANTS
1801 Whispering Brooke Drive
Newtown Square, PA 19073

WRIT OF POSSESSION

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF Chester

To the Sheriff of Chester County, Pennsylvania.

    (1) To satisfy the judgment for possession in the above matter you are directed to deliver possession of the following described property to CASCADE FUNDING RM1 ALTERNATIVE HOLDINGS, LLC, Plaintiff, being: (Premises as follows): 1801 Whispering Brooke Drive Newtown Square, PA 19073

    (2) To satisfy the costs against the defendants you are directed to levy upon any property of the defendants and sell his, her or their interest therein.

_____
Prothonotary, Court of Common Pleas
Chester County

By:_____
            Deputy

Dated: _____

# EXHIBIT B

*2018-08540-RC*

Term
No. 2018-08540-RC

**IN THE COURT OF COMMON PLEAS**
**Chester COUNTY**

CASCADE FUNDING RM1 ALTERNATIVE HOLDINGS, LLC

vs.

DREAMA O'DELL
and OCCUPANTS
1801 Whispering Brooke Drive
Newtown Square, PA 19073

---

**WRIT OF POSSESSION**

---

Costs

KML LAW GROUP, P.C.
Suite 5000 BNY Independence Center
701 Market Street
Philadelphia, PA 19106
(215) 825-6454

*2018-08540-RC*

## LONG/DEED DESCRIPTION

ALL THAT CERTAIN unit in Quaker Farms Subdivision, Situated in the Township of Willistown, County of Chester, The Commonwealth of Pennsylvania. Being described according to a survey plan prepared for Dreama O'Dell by R. H. Smith Surveyors dated September 15, 2015 being # 150906-1 as follows to wit:

Beginning at a corner of the about to be described Unit, said point being the following 2 courses and distance from a corner of a parking lot on the Southerly side of Meadow Hunt Lane;
    1. Along the northerly face of curb N 73o 48' 40" W 20.00 feet to a point;
    2. Thence leaving the said northerly face of curb crossing common open space of Quaker Farms
        S 16o 11' 20" W 47.24 feet to the Place of Beginning;
Thence from said PLACE of BEGINNING along or near the face of the Unit the following 14 courses and distances:
    1. S 3o 13' 05" W 10.25' to a corner;
    2. Thence S 86o 46' 55" E 31.03' to a corner;
    3. Thence S 3o 13' 05" W 21.28' to a corner;
    4. Thence N 86o 46' 55" W 29.85' to a corner;
    5. Thence S 3o 13' 05" W 7.00' to a corner;
    6. Thence N 86o 46' 55" W 41.23' to a corner;
    7. Thence N 3o 13' 05" E 21.10' to a corner;
    8. Thence N 86o 46' 55" W 11.25' to a corner;
    9. Thence S 3o 13' 05" E 18.25' to a corner;
    10. Thence S 86o 46' 55" E 41.40' to a corner;
    11. Thence N 3o 13' 05" E 4.63' to a corner;
    12. Thence S 86o 46' 55" E 18.30' to a corner;
    13. Thence S 3o 13' 05" W 5.45' to a corner;
    14. Thence S 86o 46' 55" E 21.60' to the first mentioned corner and PLACE of BEGINNING

Being the same premises granted to Edward W. Weingartner Jr from Quaker Farms LP by deed dated November 2, 2007 and recorded January 9, 2008 in Deed Book 7343, Page 837, Instrument Number 10814877. Title to said premises is vested in Florida Real Estate LLC by deed from Edward W. Weingartner Jr dated November 2, 2007 and recorded August 1, 2008 in Deed Book 7491, Page 943, Instrument Number 10865491.

Premises Being Known as: 1801 WHISPERING BROOKE DRIVE, NEWTOWN SQUARE, PENNSYLVANIA 19073.

BEING PART OF TAX I.D. #: 54-08-0073

11616351   B: 9772 P: 932   SHD
07/06/201809:11 AM               Page 2 of 5
MCCABE WEISBERG

2018-08540-RC



**Case Title:**     CIT BANK N A et al VS. O'DELL, DREAMA et al

**Case Number:**     2018-08540-RC

**Type:**     WRIT OF POSSESSION ISSUED

By:

Debbie Bookman, Prothonotary

Electronically signed on 2022-06-23 10:33:45    page 4 of 4

Fredda L. Maddox

By

Deputy Sheriff

A TRUE COPY
ATTEST

*2018-08540-RC*

IN THE COURT OF COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

Cascade Funding                         :      CASE NO. 18-08540
2021 Alternative                        :
Holdings, LLC                           :
                    VS.                 :
                                        :
Deanna O'Dell                           :
Occupants                               :      CONFESSION OF JUDGMENT FOR
                                               POSSESSION OF PERSONAL/REAL PROPERTY

# NOTICE OF POSSESSION/EVICTION

TO: _____

Please note that pursuant to the WRIT OF POSSESSION issued in the above case, I have been directed to **take possession** of the
following **PERSONAL property**:

_____

_____

and deliver possession of said **PERSONAL property** to:

_____

_____

- - - - - - - - - - - - - - - - - - - - - - - - - - -

TO: Deanna O'Dell
Occupants

Please note that pursuant to the WRIT OF POSSESSION issued in the above case, I have been directed to **EVICT** you from the
**premises** known as:

1801 Linispring Banke Dr
Newtown Square, PA 19073

## EVICTION Scheduled For:

| Tuesday | September 27, 2022 | 11:00 | A.M./P.M. |
|---------|--------------------|-------|-----------|
| **DAY** | **DATE**     **YEAR** | **TIME** |

_____          8/15/22          _____
**DEPUTY SHERIFF**                **DATE**          **SHERIFF**
SHERIFF FORM REV. 2/2020

DREMA ODELL

   Plaintiff

  v.

CASCADE FUNDING RM1
ALTERNATIVE HOLDINGS LLC

   Defendant

: IN THE COURT OF COMMON

: CHESTER COUNTY, PENNSYLVANIA

: NO. 2022-02241-CT

: CIVIL ACTION

## ORDER

  WHEREAS, the parties entered into an Agreement of Sale with Plaintiff as Buyer and Defendant as Seller, dated on or about October 22, 2020, for the sale of a plot of land with a house identified as 1801 Whispering Brooke Drive, Newtown Square, PA 19073;

  WHEREAS, Plaintiff has tendered $1,000 deposit money and otherwise performed all conditions and obligations possible given Defendant's failure to cooperate;

  WHEREAS, Plaintiff brought suit to compel Defendant's specific performance under the Agreement of Sale;

  WHEREAS, following service, Defendant failed to answer the suit;

  WHEREAS, Plaintiff obtained a default judgment on June 6, 2022;

  NOW, THEREFORE, this _17th_ day of ~~September~~ October, 2022, upon consideration of Plaintiff's Motion to Enter or Confirm Judgment on Defendant's Default and no response, it is ORDERED that the motion is GRANTED.

  Further, it is ORDERED that Defendant execute the Special Warranty Deed attached to the within motion as Exhibit A and deliver the same to Plaintiff

*2022-02241-CT*

Exhibit AC

in exchange for payment of $275,000.00, which sum, pursuant to the Agreement

of Sale, may be obtained by Plaintiff as a mortgage against the property.

BY THE COURT:

Edward Griffith, J.

*2022-02241-CT*

Exhibit C

DREMA ODELL

       Plaintiff

  v.

CASCADE FUNDING RM1
ALTERNATIVE HOLDINGS LLC

       Defendant

: IN THE COURT OF COMM

: CHESTER COUNTY, PENNSYLVANIA

: NO. 2022-02241-CT

: CIVIL ACTION

## ORDER

WHEREAS, the parties entered into an Agreement of Sale with Plaintiff as Buyer and Defendant as Seller, dated on or about October 22, 2020, for the sale of a plot of land with a house identified as 1801 Whispering Brooke Drive, Newtown Square, PA 19073;

WHEREAS, Plaintiff has tendered $1,000 deposit money and otherwise performed all conditions and obligations possible given Defendant's failure to cooperate;

WHEREAS, Plaintiff brought suit to compel Defendant's specific performance under the Agreement of Sale;

WHEREAS, following service, Defendant failed to answer the suit;

WHEREAS, Plaintiff obtained a default judgment on June 6, 2022;

NOW, THEREFORE, this ___17th___ day of ~~September~~ October, 2022, upon consideration of Plaintiff's Motion to Enter or Confirm Judgment on Defendant's Default and no response, it is ORDERED that the motion is GRANTED.

Further, it is ORDERED that Defendant execute the Special Warranty Deed attached to the within motion as Exhibit A and deliver the same to Plaintiff

## EXHIBIT C          *2022-02241-CT*

in exchange for payment of $275,000.00, which sum, pursuant to the Agreement

of Sale, may be obtained by Plaintiff as a mortgage against the property.

BY THE COURT:

_____
Edward Griffith, J.

2          *2022-02241-CT*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: Drema O'Dell,                                   Chapter 7

                 Debtor(s)

CASCADE FUNDING RM I ALTERNATIVE            NO 22-12578 AMC
HOLD INGS, LLC

                 Creditor                11 U.S.C. § 362

     vs.

Drema O'Dell,

                 Debtor(s)

Gary F. Seitz, Esq.,

                 Trustee

## O R D E R

AND NOW, this _____ day of _____, 2022, upon the Debtor's

Motion to Convert Chapter 7 Case to Chapter 13 Case and Re-Implement the Stay

on Out of Bankruptcy Collections, and upon any response or objection thereto, it is

hereby ORDERED and DECREED that the said Motion is GRANTED.

1. Pending the conversion, the "automatic stay" is hereby re-implemented to

   stay and suspend the acts of Cascade Funding RM1 Alternative Holdings

   LLC to eject the Debtor from the premises at 1801 Whispering Brooke

   Drive, including all actions in the Court of Common Pleas of Chester

   County, Pennsylvania and the Superior Court of Pennsylvania;

2. The Debtor is allowed to disburse funds to hire and retain counsel; and

3. This case is converted to a case under Chapter 13, with the conversion

   effective on the 45th day following the Debtor's Motion to convert this case.


BY THE COURT:

_____

J.